WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy Sippe, wife; Joseph Lawrence Sippe, husband,<br><br>Plaintiffs,<br><br>v.<br><br>Travelex Insurance Services, Incorporated, a Delaware corporation; On Call International, LLC, a Delaware corporation; Stonebridge Casualty Insurance Company, an Ohio corporation; et al.,<br><br>Defendants. | No. CV-13-01140-PHX-GMS<br><br>**ORDER** |

Pending before this Court is Plaintiff's Motion to Strike Defendant On Call International's Designations of Non-Party Tortfeasors or Alternatively, Motion for Leave To Amend Complaint and Vacate Existing Deadlines (Doc. 84).  For the reasons set forth below the Motion to Strike is granted to the extent that the non-party designation of David Sippe is stricken.  The balance of the Motion to Strike is denied.  The Alternate Motion for Leave to Amend and to Vacate Existing Deadlines is granted in light of Defendants' non-opposition to it.

## BACKGROUND

In this case, Plaintiffs sue three companies who were involved in an alleged joint venture to provide travel medical insurance.  The initial Complaint alleges that after securing the travel policy, and while on vacation in Paros Island in Greece, Dr. Sippe slipped from his bunk and sustained a subdural hematoma.   He began suffering

hallucinations and engaging in combative behavior.  Plaintiffs contacted Defendant On Call and Dr. Sippe was transferred to Athens Medical Center.  Evaluations immediately provided to Defendant On Call from the physicians at Athens Medical Center attributed the seizure to a recent increase in Dr. Sippe's medication.  The Athens physicians were in contact with Dr. Sippe's physicians in Phoenix and thus were aware that Dr. Sippe was being treated for his Parkinson's Disease with a medication called Stalevo.  The dosage of Stalevo was increased by his treating neurologist, Dr. Darry Johnson, just prior to his trip. The initial Complaint alleges that although the doctors in Athens diagnosed Dr. Sippe with a subdural hematoma, they did not believe that it required treatment and could not correctly diagnose the reason for his hallucinations and combativeness which they apparently incorrectly believed resulted from the Stalevo medication or from a separate condition.

The initial Complaint further alleges that during the care received in Athens, Plaintiffs were in consultation with Dr. Sippe's neurologists in Phoenix including Dr. Johnson and Dr. Ralph Pagano "who recommended that Larry be returned home to the U.S. (Phoenix) immediately."  Doc. 1-1 at ¶ 17.  Mrs. Sippe apparently sought from On Call Dr. Sippe's early return to the United States, and the complaint alleges, On Call advised her that it would send a doctor to escort Dr. Sippe back to the United States, and that it had arranged for transportation on a commercial flight.  On Call, however, according to the initial Complaint, failed to carry through on this promise, and further declined to provide such transportation for an additional week because On Call stated that Dr. Sippe's Greek physicians recommended that he stay in Athens.  During this time, Ms. Sippe, in association with David Sippe, Dr. Sippe's son, independently hired supplemental nursing care to be provided to Dr. Sippe.

Plaintiffs' initial Complaint further alleges that during this period of alleged delay, Dr. Sippe again fell out of his hospital bed on May 27, and thereafter remained unconscious until after his eventual surgery in Phoenix.  Mrs. Sippe alleges that she and Dr. Sippe's son had to arrange for his transportation on a commercial carrier and carry it

out on their own without any assistance from On Call.  The initial Complaint further alleges that On Call refused to assist in the discharge of Dr. Sippe from Athens General which required the payment of his fees there.  Upon his arrival in Phoenix, Dr. Sippe's U.S. doctors determined that Dr. Sippe had a bleeding subdural hematoma that needed immediate brain surgery.  As a result of these alleged delays in returning Dr. Sippe's to the U.S., Plaintiffs allege that Dr. Sippe's subdural hematoma was allowed to grow in size and, as a result, he suffered "severe and permanent brain injury that has affected him "cognitively, physically and emotionally."

Based on the above factual allegations of delay in transportation, the initial Complaint sets forth five substantive counts—breach of contract, bad faith (tort), breach of fiduciary duty, negligence, and negligent or intentional misrepresentation.  Plaintiffs filed this suit in Maricopa County Superior Court on April 30, 2013.  Defendants removed the initial Complaint to this Court and On Call subsequently filed its initial answer on June 12, 2013.

Plaintiffs, within the time period allowed by this Court's Case Management Order filed a Motion to Amend the Complaint.  The First Amended Complaint ("FAC") adds two claims to the claims set forth in the previous complaint: (1) In the event that any Defendant alleged that Travel Assistance and Concierge Services coverage was not included in the insurance coverage purchased by the Sippes, the Sippes added an alternative claim for statutory misrepresentation in connection with the sale of the travel insurance policy under A.R.S. § 20-443, and, (2), the Sippes added a claim for promissory estoppel that is based on the same factual allegations as the Plaintiffs' claim for negligent or intentional misrepresentation.

Plaintiffs also revised the factual allegations of the initial Complaint in a subtle but important way.  Paragraph 34 of the FAC subtly expands the theory of ¶ 34 of the initial Complaint.  In the initial Complaint, ¶ 34 alleged that the delay in returning Dr. Sippe to the U.S. allowed Dr. Sippe's subdural hematoma to grow in size resulting in injury.  In ¶ 34 of the FAC, however, Plaintiffs abandon any specification that the damage arose as a

result of the growth of the subdural hematoma during the delay and instead allege that the delay prevented Dr. Sippe from receiving proper medical care and treatment for his medical conditions which led to and/or resulted in him sustaining injury.  Similarly, in ¶ 16, the initial Complaint stated that the Greek physicians diagnosed the subdural hematoma but recommended no treatment for it, and could not correctly diagnose the cause of the continuing symptoms.  In the FAC, the amended paragraph more broadly alleges that the Greek hospital and physicians were unable to provide Dr. Sippe proper treatment for his medical condition.  Plaintiffs have further revised ¶ 17 of their FAC to suggest that Drs. Pagano and Johnson informed Plaintiffs that Dr. Sippe needed to be returned home to receive proper medical care and treatment and On Call was or should have been aware of this advice.

Plaintiffs' motion to amend their complaint was filed on September 24, 2013.  After considering the responses in opposition, the Court granted the motion to amend on November 22, 2013.   Defendant On Call filed its Answer to the FAC on December 10, 2013.  On January 21, 2014, On Call filed its non-party at fault designations, 209 days after it had filed its initial answer and forty-two days after it filed its answer to the FAC.

**ANALYSIS**

The Arizona Rules of Civil Procedure specify that:

> Any party who alleges . . . that a person or entity not currently or formerly named as a party was wholly or partially at fault in causing any personal injury . . . shall provide the identity location and the facts supporting the claimed liability of such nonparty . . . within one hundred fifty (150) days after the filing of the party's answer.  . . . The trier of fact shall not be permitted to allocate or apportion any percentage of fault to any nonparty whose identity is not disclosed . . . except upon written agreement of the parties or upon motion establishing good cause, reasonable diligence, and lack of unfair prejudice to other parties.

Ariz. R. Civ. P. 26(b)(5).  Because this 150 day limit is inextricably intertwined with Arizona substantive law, it applies in federal court.  *Wester v. Crown Controls Corp.,* 974

F. Supp. 1284, 1288 (D. Ariz. 1996).

On Call does not assert that it has a written agreement with Plaintiffs allowing for later designation of non-parties at fault, nor did it file a motion with this Court asking permission to file such designations late and in which it established good cause, reasonable diligence and a lack of unfair prejudice to the other parties in the case.  On Call's principal response to the motion to strike is that its designations were timely.  To the extent that On Call argues that the 150 day period recommences with every successive answer it files to an amended complaint, the Court has previously rejected that argument, and does so again.  *Monje v. Spin Master Inc.,* CV 09-1713-PHX-GMS, 2013 WL 2390625 at *10-11 (D. Ariz. May 30, 2013), *see also Daly v.   Insurance Co. of America,* CV 00-40-PXH-SRB, 2002 WL 1768887 at *17 (holding that "[Defendant] asserts that the 150 –day time period begins to run after the last-filed answer but cites no law to support this reading of Rule 26(b)(5).   The text of Rule 26(b)(5) makes no suggestion that the 150 days should be counted from anything but the initial answer.")

To the extent that an amended complaint raises new claims or facts so that reasonable Defendants would not have been previously aware of the existence of or need to name a non-party at fault until the amended complaint was filed, then the period in which to name a non-party would be extended, presumably by motion filed by the Defendant establishing good cause, to provide for a sufficient period in which to identify such non-parties.  On Call has filed no such motion.  Nevertheless to the extent that the parties have addressed such questions in the briefing on the motion to strike, the Court will assume that On Call has raised all such arguments that it has in its Response, and will not oblige it to refile a separate motion, although appropriate practice would have dictated it do so.

With respect to some of On Call's designations, the proposed Second Amended Complaint provides sufficient reason to allow the late designations.  With respect to others, it does not.  The Plaintiffs' proposed Second Amended Complaint seeks to recover for damages allegedly inflicted on Dr. Sippe, which resulted from Defendants

1    delaying his return to the United States which allegedly was necessary for him to receive

2    appropriate medical care.   Thus, under the proposed Second Amended Complaint, the

3    parties may dispute whether transport was appropriate, or whether any additional damage

4    was caused Dr. Sippe due to the timing of his return to the United States.   But, whether or

5    not any health care provider committed medical malpractice, or whether the Defendants

6    are vicariously liable for any such malpractice, is not at issue.   Nevertheless, the proposed

7    Second Amended Complaint complicates the issue because in it, Plaintiff has added

8    assertions to allege that Dr. Sippe's American physicians were not just of the view that he

9    should immediately return home for treatment but, that Dr. Sippe could not receive

10   "proper medical care," for his condition in Greece.   They further otherwise allege that On

11   Call made its determinations about returning Dr. Sippe home under circumstances in

12   which it was or should have been aware of their view that Dr. Sippe had to return home

13   immediately to receive appropriate care.

14          To the extent that the difference in the pleading now suggests that Dr. Sippe was

15   not receiving appropriate medical care and treatment in Greece, the Court allows the late

16   designation as a non-party at fault, of Private Nurse Katrina and other nurses who were

17   retained by the Plaintiffs in Greece to provide supplemental care.

18          The Court also allows the late designation of Dr. Pagano to the extent that in that

19   designation they allege that "Dr. Pagano provided direction to the Greek neurologists

20   regarding the medications Dr. Sippe required.   To the extent that others are critical of the

21   manner in which the Greek neurologists managed Dr. Sippe's medications, their

22   management was directed by Dr. Pagano."   The Court also allows the late designation of

23   Dr. Pagano for the purpose of claiming that, to the extent that he had an opinion that Dr.

24   Sippe could not receive adequate medical care in his situation in Greece, he was

25   negligent in taking steps in light of that opinion.

26          Defendants also designate Dr. Johnson for the purpose of claiming that, to the

27   extent the he had an opinion that Dr. Sippe could not receive adequate medical care in his

28   situation in Greece, he was negligent in taking steps in light of that opinion.   The Court

will also allow the late designation on that topic.  The Court is not sure how the allegation that Dr. Johnson prescribed the Stalevo in the first place, and may have injured Dr. Sippe by doing so, would constitute fault for the injury alleged in the proposed Second Amended Complaint that would need to be designated pursuant to the non-party at fault rules.  "In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury."  A.R.S. § 12-2506.  The injury alleged in the proposed Second Amended Complaint appears to be the injury that arose as a result of On Call's alleged failure to timely evacuate Dr. Sippe from Greece.  Any injury that Dr. Johnson may have inflicted on Dr. Sippe, while possibly related to the extent that it may have caused the need for care to arise in Greece, may be separate and apart from any injury that Dr. Sippe received as a result of the transaction alleged in the proposed Second Amended Complaint.  Nevertheless, Defendants do not object to the filing of the proposed Second Amended Complaint, which incorporates their entire designation as it pertains to Dr. Johnson.

The Court, however, strikes the late designation of David Sippe based on his independent efforts to transfer his father back home.  Defendants have been aware of these facts and their possible relevance since the inception of this suit.  Nothing about the Amended Complaint or any subsequent discovery justifies an extension in the deadline for naming non-parties at fault.  The late designation of David Sippe as a non-party at fault is, therefore, stricken.[1]

Although the Court would not otherwise permit any additional topics included in the late designation as it pertains to any of the three designations that the Court has permitted in part, the designations which the Court has allowed include the principal topics contained in those designations.  Further, Defendants do not otherwise oppose the filing of the Second Amended Complaint proposed by the Plaintiff.  Accordingly,

---

[1] To the extent that On Call continues to request a stay based on the Court's striking of the designation of David Sippe as a non-party at fault so that it can appeal this order to the Ninth Circuit Court of Appeals, that request is denied.

1    **IT IS HEREBY ORDERED** that the Motion to Strike is granted in part and
2    denied in part (Doc. 84).

3    **IT IS FURTHER ORDERED** that the Motion for Leave to Amend Complaint
4    and Vacate Existing Deadlines (Doc. 84) is granted.  Plaintiffs shall file and serve their
5    Second Amended Complaint on all parties **within fourteen days** of the date of this
6    Order.

7    **IT IS FURTHER ORDERED** that the deadlines in the Case Management Order
8    (Doc. 36) are vacated.  An Order setting a new Rule 16 Case Management Conference
9    will follow.

10   Dated this 27th day of February, 2014.

G. Murray Snow
United States District Judge